IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RUTH ROYAL,

        Plaintiff,

v.                          CIVIL ACTION NO. 2:24-cv-00732

THE HONORABLE TERA SALANGO, *Judge,*
*Circuit Court of Kanawha County, West Virginia*, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendant Mayer's *Motion to Dismiss in Lieu of an Answer* (Document 17), the *Petitioner's Response to Motion to Dismiss in Lieu of Answer by Respondent Alex J. Mayer, Secretary, W. Va. Dept. of Human Services* (Document 19), *Judge Tera Salango's Motion to Dismiss* (Document 20) and *Memorandum of Law in Support* (Document 21), the *Petitioner's Reply to Judge Tera Salango's Motion to Dismiss* (Document 22), the *Petitioner's Supplement of Earlier Omitted Portion of Record* (Document 23), *Judge Tera Salango's Reply in Support of Motion to Dismiss* (Document 24), the Plaintiff's *Petition for Declaratory Judgment and Injunction* (Document 2), and all attached exhibits. For the reasons stated herein, the Court finds that the Defendants' motions to dismiss should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiff, Ruth Royal, brought this suit pursuant to 42 U.S.C. § 1983 alleging violations of her Fourteenth Amendment rights by the Defendants, Kanawha County Circuit Court Judge,

Tera Salango, and West Virginia Department of Human Services ("DHS") Secretary, Alex J. Mayer. These allegations stem from a series of legal attempts by Ms. Royal to intervene in abuse and neglect proceedings and a subsequent adoption action involving her grandchild, I.R.

Ms. Royal has an adult daughter who gave birth to I.R. in September 2019. The Department of Health and Human Resources, now operating as DHS, initiated abuse and neglect proceedings against Ms. Royal's daughter. I.R. was placed with a foster family by DHS. Ms. Royal contacted DHS in November 2019 after learning of I.R.'s birth, and Child Protective Services ("CPS") conducted a visit of the Plaintiff's home. DHS concluded that the Plaintiff's home was not an appropriate placement for I.R., and I.R. remained in the custody of his foster parents. I.R.'s mother's parental rights were ultimately terminated.

In February 2020, Ms. Royal filed a motion to intervene in the abuse and neglect proceedings presided over by Judge Salango in the Kanawha County Circuit Court, arguing that she was not properly considered for placement. A hearing was held on the matter, where the Plaintiff testified that she had not seen her daughter in three years and had not met I.R. Judge Salango determined that placing I.R. with the Plaintiff was not in his best interests because she had never met I.R., she was estranged from I.R.'s mother at the time, and her home was not a suitable placement. Judge Salango also noted the untimeliness of Ms. Royal's motion to intervene and denied the motion. The Supreme Court of Appeals of West Virginia affirmed. *In re I.R.*, No. 20-0512, 2022 WL 279015 (W. Va. Jan. 31, 2022).

In March 2022, Ms. Royal filed a petition to adopt I.R. Judge Salango denied the adoption finding a failure to comply with the statutory requirements and that the best interests of I.R. outweighed the grandparent preference provided by West Virginia law. The Supreme Court of Appeals of West Virginia affirmed the decision. *In re Adoption of I.R.*, No. 22-0418, 2023 WL

3193209 (W. Va. May 2, 2023). The Supreme Court of the United States also denied the Plaintiff's petition for writ of certiorari. *R. R. v. W. Va. Dep't of Health & Hum. Res.*, 144 S. Ct. 1364, *reh'g denied*, 144 S. Ct. 2652 (2024).

Around the same time as the adoption petition, Ms. Royal also filed for grandparent visitation, which Judge Salango denied. The court considered the factors set forth in W. Va. Code § 48-10-502 and determined that the Plaintiff did not have a relationship with I.R., had never lived with I.R., and had never been a significant caretaker for I.R. Furthermore, the court found that should visitation be granted, it could strain the relationship between I.R. and his foster parents. While there was no evidence that grandparent visitation would be a significant burden on the foster parents or that Ms. Royal had a history of abuse, these conclusions were not sufficient to offset the factors weighing against grandparent visitation.

Throughout the litigation period, the Plaintiff has filed several motions to stay I.R.'s adoption and motions for rehearing. Her various motions have been denied by Judge Salango and the Supreme Court of Appeals of West Virginia. (Document 2-4 at 1–6.) In September 2023, Ms. Royal filed a motion for relief from judgment, which was also denied by Judge Salango. (*Id*. at 10.) She filed a motion for rehearing on February 16, 2024. (*Id*. at 13.) The Plaintiff's current petition notes there is also a pending motion for supervised visitation. (Document 2.)

As discussed above, each of Ms. Royal's legal actions have thus far been unsuccessful in granting her access to her grandson. She now seeks redress from this Court. She contends that her due process rights have been violated by the Defendants, and that these constitutional violations have led to adverse decisions against her. Specifically, she has been unable to intervene in the abuse and neglect proceedings, adopt I.R., or form a relationship with I.R. She seeks declaratory judgment affirming her constitutional rights, access to the results from the CPS

inspection of her home, a hearing before Judge Salango that allows her and her counsel to be present for the duration of the hearing, and that the Defendants be enjoined from further action.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. "In contrast to its treatment of disputed issues of fact when considering a Rule 12(b)(6) motion, a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion." *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986) *rejected on other grounds, Sheridan v. United States*, 487 U.S. 392 (1988) (but explaining that a court should accept the allegations in the complaint as true when presented with a facial attack that argues insufficiency of the allegations in the complaint). Reasonable discovery may be necessary to permit the plaintiff to produce the facts and evidence necessary to support their jurisdictional allegations. *Id.*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and

4

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Id*. (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Both Defendants have separately moved to dismiss for failure to state a claim and for lack of subject matter jurisdiction, citing the *Rooker–Feldman* doctrine. The Plaintiff argues that her claim is not barred by the *Rooker–Feldman* doctrine, and that the Court has jurisdiction. Defendant Judge Salango also presents arguments in her motion on abstention and judicial immunity. As set forth below, the Court does not have subject matter jurisdiction over the Plaintiff's claim under the *Rooker–Feldman* doctrine, and therefore does not address Judge Salango's additional arguments.

In his motion, Defendant Mayer argues that the *Rooker–Feldman* doctrine bars the Plaintiff's claim because she has lost in state court several times, her injuries asserted in this case flow from prior state court decisions, and she is seeking impermissible federal review and rejection of decisions made by state courts. Similarly, Defendant Judge Salango asserts that the Plaintiff has admitted to losing at least three times in state court, her due process claim is inextricably intertwined with the order denying her motion to intervene, and the relief requested here is a direct product of the denial of intervenor status and her inability to obtain access to I.R.

In response, the Plaintiff argues that she is presenting an independent claim based on the Defendants' past actions, she is not challenging any prior court decisions, she has never raised a claim with respect to the state court's "abrupt, unexpected and unsolicited changes in all critical findings,"[1] and she is not asking this Court to make any decisions regarding domestic relations

---

[1] The Plaintiff contends that Judge Salango's finding that her motion to intervene was "untimely in light of her uncontroverted notice of these proceedings" and the adoption of CPS' recommendation that the Plaintiff's home was not a "proper or suitable placement for the minor child" were adverse. (Document 2 at 2). She states these adverse

law. (Document 22 at 5). Further, she also argues that supervised visitation, as opposed to unsupervised visitation, has never been sought for I.R., and that supervised visitation is not inextricably intertwined with the relief she has previously sought in state court.

In Defendant Judge Salango's reply, she states that the Plaintiff cannot artfully draft around the inextricable intertwinement of her motion to intervene. Additionally, she argues that the Plaintiff admits she has sought visitation and has previously asserted violations of her constitutional rights. Defendant Mayer did not reply.

The *Rooker–Feldman* doctrine is derived from two Supreme Court cases. In *Rooker*, the Supreme Court explained that lower federal courts could not "entertain a proceeding to reverse or modify the judgment for errors" from a state court decision, because to "do so would be an exercise of appellate jurisdiction" and "[t]he jurisdiction possessed by the District Court is strictly original." *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). In *Feldman*, the Supreme Court held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings," as "[r]eview of such judgments may be had only in this Court." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

"The *Rooker–Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are 'inextricably intertwined with' questions ruled upon by a state court, as when success on the federal claim depends upon a determination 'that the state court wrongly decided the issues before it.'" *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) (quoting *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir. 1995)). The Supreme Court has recently emphasized that "*Rooker-Feldman* . . . is a narrow

---

findings were then changed to inconclusive findings when Judge Salango stated that "[t]he record is unclear as to what effort CPS made to identify potential familial replacements, or whether the Respondent Mother identified the Petitioner as a relative and potential replacement" in a corrected order. (*Id*.).

doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The Court finds that it is without jurisdiction to consider Ms. Royal's claim pursuant to the *Rooker–Feldman* doctrine. In her petition, Ms. Royal claims that the Defendants' violations of her Fourteenth Amendment rights—specifically, their failure to notify her about the abuse and neglect proceedings and their prevention of her forming a relationship with I.R.—have resulted in adverse decisions against her. She alleges these violations led to the denial of her attempts to intervene or to adopt her grandchild.

Her constitutional claims are clearly inextricably intertwined with the state court's decisions. Each of the Plaintiff's asserted injuries have been caused by state court judgments. She was unable to intervene in the abuse and neglect proceedings because of Judge Salango's order denying her motion to intervene. She was also denied visitation[2] or the ability to adopt I.R. due to state court orders. Further, the Plaintiff has not only been unsuccessful in circuit court, but also in appellate court. These rulings form the basis of her current constitutional claims.

Each of the state court judgments she takes issue with went through the appeals process and became final before she sought redress from this Court. The relief she seeks in her petition—declaratory judgment affirming her constitutional rights, access to the CPS inspection documents, a hearing before Judge Salango, and the enjoinment of the Defendants from further action—is an

---

2 The Plaintiff also makes a distinction between regular visitation, which has already been denied by the circuit court, and supervised visitation, which appears to still be pending. West Virginia law does not make such a distinction, but simply allows a court to impose conditions on visitation, such as supervision, at its own discretion. W. Va. Code § 48-10-803. Because the circuit court has already made its decision on visitation between the Plaintiff and her grandchild, the issue became final before these proceedings were initiated.

invitation to review and reject findings by the Kanawha County Circuit Court, the Supreme Court of Appeals of West Virginia, and the Supreme Court of the United States. Essentially, Ms. Royal is asking this Court to undo the decisions the state court has previously made and allow her access to her grandson. This Court cannot provide such a remedy, as doing so would exceed its jurisdiction. Therefore, the Defendants' motions to dismiss must be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that Defendant Mayer's *Motion to Dismiss in Lieu of an Answer* (Document 17) and *Judge Tera Salango's Motion to Dismiss* (Document 20) be **GRANTED** and that this matter be **DISMISSED** for lack of jurisdiction. Any pending motions are hereby **TERMINATED as moot**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 10, 2025

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA